### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                          :

**SUZANNE M. JANITOR,**                         :      **Bankruptcy No. 10-22594-JAD**
                                                :
              **Debtor.**                       :      **Chapter 7**
..............................................:
**Suzanne M. Janitor,**                         :
                                                :
              **Movant,**                       :
                                                :
              **v.**                            :      **Related to Doc. No. 22**
                                                :
**Fidelity Bank and PNC Bank,**                 :
                                                :
              **Respondents.**                  :

Appearances:      Gary W. Short, for Suzanne M. Janitor.
                  Nicholas A. Didomenico, for Fidelity Bank.
                  Beverly Weiss Manne and Christopher L. Borsani,
                      for PNC Bank.

### <u>MEMORANDUM OPINION</u>

Suzanne M. Janitor (the "Debtor") moves to avoid the judicial liens of the

respondents, Fidelity Bank and PNC Bank (hereafter "Fidelity" and "PNC,"

respectively). The Debtor seeks to avoid the judicial liens that allegedly impair an

exemption the Debtor has taken in residential real property owned as a tenant by

the entirety with her non-filing spouse. For the reasons set forth below, this Court

holds that the Debtor is permitted to take such an exemption and is permitted to

avoid the entirety of PNC's $147,972.16 judicial lien, while avoiding $162,448.17

of Fidelity's $202,755.17 judicial lien.

## I.

The Debtor filed a Chapter 7 bankruptcy petition on April 9, 2010. In the Debtor's Bankruptcy Schedules, she indicated that she owns a 50% interest in residential realty located at 1256 Lamson Circle, Pittsburgh, PA 15241, (the "Realty"), which the Debtor values at $97,000. The Debtor now concedes that she actually owns 100% of the Realty with her non-filing spouse as a tenant by the entirety. The Realty was appraised at $194,000 just one week subsequent to when the Debtor filed for bankruptcy. Because neither Fidelity nor PNC challenge such appraisal, this Court shall accept for the purpose of the instant lien avoidance motion that the Realty was worth $194,000 as of the date of the Debtor's bankruptcy filing.

The parties agree that the Realty is subject to a first mortgage lien in favor of Citimortgage, Inc. (hereafter "Citi") in the amount of $135,967. The parties also agree that Fidelity possesses a second priority judicial lien upon the Realty in the amount of $202,755.17. Finally, the parties agree that PNC possesses a third priority judicial lien upon the Realty in the amount of $147,972.16.

As mentioned above, the Debtor's spouse is not presently in bankruptcy. However, the Debtor and her non-filing spouse are both liable on Citi's first mortgage lien, and each are liable on the judgment claims that form the basis for the judicial liens of Fidelity and PNC.

In her Bankruptcy Schedule C, the Debtor claims the federal exemptions to which she is entitled under 11 U.S.C. § 522(b)(2), rather than the state and entireties exemptions to which she would have been entitled under 11 U.S.C. § 522(b)(3). In particular, the Debtor takes two separate exemptions in the Realty: $16,625 via § 522(d)(1) and $1,101 via § 522(d)(5) for a total exemption equal to $17,726.

Pursuant to 11 U.S.C. § 522(f), the Debtor now seeks to avoid the judicial liens of Fidelity and PNC on the Realty asserting that each lien of the judgment creditors impairs the Debtor's exemption in the Realty. A hearing was held on the Debtor's lien avoidance motion on August 31, 2010, and the parties have subsequently briefed the matter. This matter is now ripe for determination.[1]

## II.

Fidelity and PNC object to the Debtor's exemption in the Realty. They contend that the Debtor may not exempt the Realty that she owns as a tenant by the entirety with her non-filing spouse. In support, Fidelity and PNC argue that the Debtor's contemplated exemption will impermissibly sever the entireties interest in the Realty and is barred by the United States Court of Appeals for the Third Circuit's decision in Napotnik v. Equibank & Parkvale Savings Association,

---

[1] This matter was originally assigned to the Honorable M. Bruce McCullough. Upon his death, the matter was re-assigned to the Honorable Jeffery A. Deller. The Court enters this final determination pursuant to Fed.R.Civ.P. 63 (as adopted in Bankruptcy Proceedings by Fed.R.Bankr.P. 9028). This Court is familiar with the record in this case. The Court has also determined that this case may be completed without prejudice to the parties because of the Court's familiarity with the record and because the facts are uncontested in this matter.

679 F.2d 316 (3d Cir. 1982).  The Court is not persuaded by the creditors' arguments.

First, a tenancy by the entirety is not impermissibly severed simply by virtue of the fact that only one spouse files for bankruptcy and such spouse then elects to exempt such property.  <u>See</u> <u>In re Brannon</u>, 476 F.3d 170, 175 (3d Cir. 2007)("[F]iling a bankruptcy petition does not sever a tenancy by the entirety ... thus an individual spouse may be able to exempt the whole of entireties property from the bankruptcy estate in some circumstances,"); <u>see</u> <u>also</u> <u>In re Hackett</u>, 13 B.R. 755, 755-57 (Bankr. E.D. Pa. 1981) (sole spouse filed for bankruptcy, yet permitted to take federal exemption in entireties property).

Second, this Court finds the exemption the Debtor seeks to take in the Realty is not barred by <u>Napotnik</u>.  Fidelity and PNC correctly cite <u>Napotnik</u> for the premise that a debtor cannot use the exemptions available pursuant to § 522(b)(3)(B) to avoid a judgment lien against both a husband and wife which is secured by entireties property.  However, the Debtor distinguishes <u>Napotnik</u> from the instant matter by pointing out that she is exempting the Realty under the federal exemptions available pursuant to § 522(b)(2) (and § 522(d)(1) & (5)), rather than under § 522(b)(3)(B).  Fidelity and PNC contend that such distinguishing point by the Debtor "is a distinction without a difference" and subsequently argue that if both entireties spouses are jointly liable on a debt and only one spouse files

for bankruptcy, <u>Napotnik</u> should extend to bar the filing spouse from taking the federal exemptions in the entireties property.

Unfortunately for Fidelity and PNC, it has been held that:

> [t]he discussion of tenancies by the entirety found in <u>Napotnik</u> in our estimation should be limited to situations in which a debtor in bankruptcy claims an *exemption* in entireties property *in accordance with § 522(b)(2)(B) of the Bankruptcy Code [current day § 522(b)(3)(B)]*. We so conclude because the Third Circuit limited its analysis to construing and applying *the final phrase of § 522(b)(2)(B) [current day § 522(b)(3)(B)]*.

<u>In re Owens</u>, 400 B.R. 447, 455 (Bankr. W.D. Pa. 2009) (emphasis added). What's more, the Third Circuit in <u>Brannon</u> has expressly held that a spouse filing individually may exempt certain entireties property, in spite of the presence of an encumbrance thereon securing a joint debt, by taking the federal exemptions in such entireties property. <u>See</u> <u>Brannon</u>, 476 F.3d at 175-176. Therefore, the distinction that the Debtor draws between the instant matter and <u>Napotnik</u> is material. Consequently, the decision in <u>Napotnik</u> does not operate to bar the exemption that has been taken by the Debtor in the Realty.

Because this Court cannot ascertain any other reason as to why the Debtor may not take the exemption in the Realty that she has elected under § 522(d)(1) & (5) via § 522(b)(2), the Court will allow such exemption by the Debtor.

## A.

Fidelity and PNC also contend that the Debtor's proposed lien avoidance is barred because, given that the Debtor filed for bankruptcy individually, such lien

avoidance would: (a) effect an impermissible unilateral division or severance of the tenancy by the entirety with respect to the Realty; and (b) impermissibly benefit the Debtor's non-filing spouse.  For the reasons set forth below, this Court rejects these arguments, and rules instead that the Debtor may, pursuant to § 522(f), avoid the judicial liens of Fidelity and PNC to the extent that such liens impair the Debtor's now allowed exemption of $17,726 in the Realty.

To support their position, Fidelity and PNC borrow heavily from the analysis contained in In re Hunter, 284 B.R. 806 (Bankr. E.D. Va. 2002).  In Hunter the debtor and his non-filing spouse were jointly liable on a junior mortgage lien which encumbered property the spouses held by the entireties.  Following the filing of his individual petition, the Debtor sought to avoid the junior mortgage lien pursuant to § 506(d).  See Hunter, 284 B.R. at 809.  Ultimately, the Hunter court held that such lien avoidance was not permitted  because it would have effected a unilateral severance of a portion of the entireties estate in the property prohibited by Pennsylvania law,[2] and would improperly benefit the nondebtor spouse without requiring the burden of filing for bankruptcy.[3]  See id. at 813-14.

In its rationale the Hunter court explained the entireties interest would be severed because, according to the Hunter court, under Pennsylvania law, "[e]ven

---

[2] The Hunter court determined that Pennsylvania law properly applied because the encumbered property was located in Pennsylvania.  See Hunter, 284 B.R. at 810.

[3] The Hunter court also held that such unilateral severance of an entireties interest is not independently authorized by any provision in the Bankruptcy Code.  See id. at 814.

if the lien were somehow voided as to the debtor's interest, it would remain as to
the [nondebtor's] interest . . . ." Id. at 813. Therefore, such lien avoidance would
only act to transform a choate (i.e., presently enforceable) lien into an inchoate
(i.e., presently unenforceable) lien.[4] See id. (discussing what would happen "if the
parties owned the property as tenants by the entireties at the time of the death of
the first tenant").

This Court agrees with the Hunter court's conclusion that the lien avoidance
sought would ultimately result in the creation of a disparateness in the spouses'
survivorship interests. However, this Court respectfully disagrees with the holding
of the Hunter court that the mere creation of such disparateness in survivorship
interests would effect an impermissible severance of a tenancy by the entireties
under Pennsylvania law.

First, just because a lien is released as to the interests of the debtor spouse
only, does not mean that the tenants by the entireties interest will be dissolved.
There is simply nothing in Pennsylvania entireties law that indicates such
property would cease to be owned as tenants by the entirety, post-lien avoidance.
See In re Tomasi, Case No. 2:10-CV-11609-VAR, Doc. #10, at p. 8 (E.D. Mich. Dec.
9, 2010) (attached as Appendix 1 to the instant opinion) (holding that, even if a
disparateness in entireties survivorship interests is created, "it is not clear why

---

[4] Such lien avoidance also would have extinguished the choate lien that existed on the
entireties property in question.

th[at] would sever the tenancy . . . [because] removing a lien, even if only as to one spouse, does not encumber, convey, or transfer a property interest.").[5]

Second, this Court accepts as a matter of entireties law that neither spouse may sever an estate held by the entireties through a unilateral act.[6] Hunter, 284 B.R. at 811 (citing cases, including In re Hefner, 262 B.R. 61, 67 (Bankr. M.D. Pa. 2001)). However, there is no indication that the creation of dissimilar survivorship interests would constitute a unilateral act prohibited by Pennsylvania entireties law. Indeed, if only one spouse were prevented from creating dissimilar survivorship interests, than any act by one spouse that could result in an inchoate lien against that spouse's survivorship interest in the entireties property would be prevented. See Napotnik, 679 F.2d at 319 (holding a creditor of only one spouse may obtain only a "presently unenforceable lien upon that spouse's expectancy of survivorship. . . ."). Surely this is not the case, as by virtue of

---

[5] The Tomasi court affirmed the bankruptcy court's decision in In re Strausbough, 426 B.R. 243 (Bankr. E.D. Mich. 2010). Tomasi and Strausbough both dealt with a fact pattern that was identical to that presented in Hunter. Tomasi held, in particular, that (a) a debtor who files for bankruptcy without his or her spouse and who wishes to avoid, pursuant to § 506(d), a lien upon entireties property that secures a joint debt may do so because such lien avoidance will not operate to sever a tenancy by the entirety under Michigan entireties law, see Tomasi, supra p.12, at pp. 7-8, and (b) such lien avoidance will serve to avoid such lien in its entirety, that is as to both spouses. See id. at p.9. The latter holding by Tomasi is not in conflict with this Court's decision that the instant Debtor's lien avoidance will not operate to avoid the lien thereon but rather will transform such lien from choate to inchoate. This is because Michigan entireties law, in contrast to that in Pennsylvania, does not allow for a creditor to obtain an inchoate lien upon one entireties tenant's survivorship interest. See H.D. Warren, Annotation, Interest of Spouse in Estate by Entireties as Subject to Satisfaction of His or Her Individual Debt, 166 A.L.R. 969 at pt. III, b & c; see also Pilip v. United States, 186 F.Supp. 397, 401 (D. Alaska 1960) (Michigan entireties law provides that a creditor who obtains a judgment against just one entireties tenant may not obtain a lien upon any part of the entireties estate).

[6] The only exception is in the event of divorce, after which the property will be held as tenants in common. See 23 Pa. Cons. Stat. Ann. § 3507(a).

owning entireties property, a spouse is not prevented from individually opening a line of credit, borrowing funds, or securing financing.

Further, nothing in Pennsylvania law prevents one spouse from acting unilaterally with regard to entireties property "provided the fruits or proceeds of such action inures to the benefit of both . . . ." Brannon, 476 F.3d at 173 (quoting Madden v. Gosztonyi Savings & Trust Co., 200 A. 624, 630-31 (Pa. 1938)). Therefore, Pennsylvania entireties law permits one spouse to take unilateral action that affects another spouse's entireties survivorship interest provided that such effect is positive (i.e., beneficial) in nature. See In re Strausbough, 426 B.R. 243, 250 (Bankr. E.D. Mich. 2010) (holding that "nothing in th[e] catalogue of rights [afforded to Pennsylvania entireties tenants] prohibits one of the parties to an entireties estate from acting to *enhance* that estate"). Because the Debtor's contemplated lien avoidance may operate to benefit the Debtor's nonfiling spouse by making Fidelity and PNC's judgment liens on the non-filing spouse presently unenforceable (i.e., transforming from choate to inchoate), such lien avoidance would not violate Pennsylvania entireties law.[7]

Finally, this Court must disagree with the Hunter court's conclusion that the contemplated lien avoidance is impermissible because it may operate to benefit the Debtor's non-filing spouse. Instead, this Court finds that any

---

[7] Even if the lien avoidance were viewed as somehow otherwise affecting the nondebtor spouse's interest in the Realty, it is unlikely that a non-filing spouse would not consent to such an act.

"incidental benefit" that a non-filing spouse may enjoy as a result of a debtor's lien

avoidance motion is not enough to require a joint filing by both spouses. See id.

at 249-250 (disagreeing with the Hunter court's analysis, holding instead that "the

statute itself [(i.e., the Bankruptcy Code)] … allows a junior lien to be avoided

whether both spouses have assumed the burdens of bankruptcy or only one," and

providing examples where only one spouse files for bankruptcy and such filing

incidentally benefits the nonfiling spouse).

As a result, this Court holds that the creation of disparate survivorship

interests with respect to the Debtor and her non-filing spouse's interest in the

Realty, does not constitute an impermissible severance of a tenancy by the

entireties interest under Pennsylvania law.[8] Therefore, the Debtor may, pursuant

to § 522(f), avoid the judicial liens of Fidelity and PNC to the extent that the liens

impair the Debtor's now allowed exemption of $17,726 in the Realty.  This Court

wishes to make clear, however, that even though the Debtor may so avoid the

judicial liens of Fidelity and PNC, such judicial liens shall remain upon the non-

filing spouse's survivorship interest in the Realty.

---

[8] As an alternate holding, this Court rules that § 522(f) would preempt Pennsylvania
entireties law if, and to the extent that, such entireties law precluded the creation of disparate
survivorship interests.  This Court so holds because the language of § 522(f) does not distinguish
between the type of debtor that may take advantage of lien avoidance pursuant to the terms of §
522(f).  In particular, such language does not in any way disqualify from the benefit of lien
avoidance a debtor who (a) is also an entireties tenant, (b) files for bankruptcy without his or her
spouse, and (c) wishes to avoid a judicial lien that encumbers entireties property, when such lien
secures a debt upon which the debtor is jointly liable with his/her nonfiling spouse.  See In re
Lashley, 206 B.R. 950, 953 (Bankr. E.D. Mo. 1997); cf. Strausbough, 426 B.R. at 249 (holding that
"the statute itself [(i.e., § 506(d))] … allows a junior lien to be avoided whether both spouses have
assumed the burdens of bankruptcy or only one.").

**B.**

Having concluded that the Debtor may avoid the judicial liens of Fidelity

and PNC, the Court must now determine to what extent such judicial liens impair

the Debtor's allowed exemption of $17,726 in the Realty.

In applying § 522(f)(2)(A), the Debtor contends that the value of the Debtor's

interest in the Realty, absent any liens, should equal $97,000, or 50% of the entire

value of the Realty.  As a result the Debtor insists that only 50% of Citi's mortgage

lien should be attributed to the Debtor's interest in the Realty ($67,983.50), and,

consequently, $191,464.67 of Fidelity's judicial lien should be avoided.[9]  As

support for such position, the Debtor relies on the Third Circuit's decision in In

re Miller, 299 F.3d 183 (3d Cir. 2002), which held that as one of two joint tenants

who "owns an undivided, one-half interest" in property, a debtor's interest is

properly valued at one-half of the amount of the equity in such property.  See id.

at 186.

Unfortunately for the Debtor, Miller is distinguishable from the instant

matter because, in Miller, the debtor owned the property to be exempted as a joint

tenant not as a tenant by the entirety.  See id. at 184.  Conversely, the Third

---

[9]The Debtor's math, when applying § 522(f)(2)(A), is as follows:

| | |
|---|---|
| Sum of the liens of Fidelity & PNC & Debtor's exemption | $368,453.33 |
| Value of Debtor's interest in Realty | $ (29,016.50) |
| ($97,000 FMV – $67,983.50 Citi 1st Mortgage) | |
| Total Amount of Impairment | **$339,436.83** |
| Less PNC's lien | $(147,972.16) |
| Impairment attributable to Fidelity's lien | **$191,464.67** |

Circuit held in <u>Brannon</u> that one spouse's aggregate interest in property owned as a tenant by the entirety under Pennsylvania law must be valued at 100% of the value of such property. <u>See Brannon</u>, 476 F.3d at 171-172 & 176-177. Therefore, the value of the Debtor's interest in the Realty, for purposes of § 522(f)(2)(A), equals 100% of the equity therein ($58,033.00), rather than 50% of such equity, ($29,016.50).[10]

Utilizing the $58,033 figure, and applying § 522(f)(2)(A) to the judicial liens of Fidelity and PNC, the Court concludes that such judicial liens together impair the Debtor's exemption to the extent of $310,420.33. Tracking the relevant language in 11 U.S.C. § 522(f)(2)(A), the math appears as follows:

| | |
|---|---|
| Fidelity's lien | $202,755.17 |
| PNC's lien | $147,972.16 |
| The Debtor's exemption | $  17,726.00 |
| Sum of the 3 figures: | **$368,453.33** |
| Value of Debtor's interest in Realty | $ (58,033.00) |
| ($194,000 FMV – $135,967 Citi 1st Mortgage) | |
| Total Amount of Impairment | **$310,420.33** |

Because PNC's judicial lien is last in priority, such lien shall be avoided in its entirety. The remainder of such impairment (i.e., $310,420.33 – $147,972.16), or $162,448.17, shall constitute the amount by which Fidelity's second priority

---

[10] Because the Debtor has incorrectly described her interest in the Realty in her Bankruptcy Schedule A as a 50% interest, and incorrectly valued such ownership interest at $97,000, the Debtor will need to amend such Schedule A so that it reflects that she owns a 100% entireties interest in the Realty, and that such interest is worth $194,000. Thus, the resulting calculation reflects a value of the Debtor's interest in the Realty of $58,033 = (Realty with a value of $194,000 - Citi's First Mortgage Lien of $135,967).

judicial lien shall be avoided.  Therefore, $40,307 of Fidelity's judicial lien shall remain after the instant lien avoidance (i.e., $202,755.17 – $162,448.17).

## III.

For all of the foregoing reasons, the Court shall grant the Debtor's lien avoidance motion pursuant to § 522(f) such that: (a) the entirety of PNC's $147,972.16 judicial lien is avoided; and (b) $162,448.17 of Fidelity's judicial lien is avoided, thereby leaving in place $40,307.00 of Fidelity's judicial lien.  The judicial liens of Fidelity and PNC shall remain post-lien avoidance upon the non-filing spouse's survivorship interest in the Realty.

**Dated:** January 4, 2011

_____
JEFFERY A. DELLER
U.S. Bankruptcy Judge

**FILED**

JAN 0 4 2011

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA

00005321.WPD

# Appendix 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

CHRISTOPHER L. TOMASI, Debtor.

_____/

Chapter 13
Case No. 09-68327-R
Judge Steven W. Rhodes

CITIZENS BANK,

           Appellant,

v.

CHRISTOPHER L. TOMASI,

           Appellee.

_____/

Case No. 10-11609
Hon. Victoria A. Roberts

## ORDER

### I.    INTRODUCTION

This matter is before the Court on appeal from a Bankruptcy Court Order which granted summary judgment to Christopher L. Tomasi, in a proceeding to determine the extent of the lien of Citizens Bank on Mr. Tomasi's primary residence.

The Court **AFFIRMS** the Bankruptcy Court.

### II.    BACKGROUND

On September 11, 2009, Mr. Tomasi filed for Chapter 13 bankruptcy. At that time, Mr. Tomasi's primary residence was security for two mortgages. The first mortgage debt, owed to HSBC Mortgage Corporation, totaled $103,990. The second mortgage debt, owed to Citizens Bank ("Citizens"), totaled $45,598. According to Mr.

1

According to the United States Bankruptcy Code, Chapter 13 bankruptcy plans

may "modify the rights of holders of secured claims, other than a claim secured only by

a security interest in real property that is the debtor's personal residence, or of holders

of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11

U.S.C. § 1322(b)(2).   Thus, the rights of the holder of an unsecured claim may be

modified in a Chapter 13 bankruptcy plan.

Whether a claim is secured or unsecured is determined under 11 U.S.C. §

506(a)(1):

> An allowed claim of a creditor secured by a lien on property in which the
> [bankruptcy] estate has an interest . . . is a secured claim to the extent of
> the value of such creditor's interest in the [bankruptcy] estate's interest in
> such property, . . . and is an unsecured claim to the extent that the value
> of such creditor's interest . . .  is less than the amount of such allowed
> claim.

A claim is a "right to payment, whether . . . secured, or unsecured." 11 U.S.C. § 101.  A

claim is deemed "allowed" when proof of the claim "is filed under section 501 of this title,

. . . unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Both parties agree that

Citizens is a creditor with an allowed claim.

Value, as used in § 506, refers to economic value.  The extent of the value of the

creditor's interest in the property is limited by the economic value of the property

included in the bankruptcy estate.   For example, if the creditor has a right to payment of

$10,000, and this right to payment is secured by a lien on a car which is part of the

bankruptcy estate, the economic value of the car dictates the value of the creditor's

interest.  So, if the car is worth only $2,000, there is only $2,000 available in the

bankruptcy estate for the creditor, and the value of the creditor's interest cannot exceed

3

$2,000.  Furthermore, if the car has two liens on it, the value of the creditors' interests
are calculated in order of priority.  Assuming the creditor just discussed is the first
lienholder, his interest consumes the entire value of the car in the bankruptcy estate,
and there is no value left over for a creditor with a second priority lien.  The value of the
first creditor's interest in the car is $2,000, and the value of the second creditor's interest
in the car is zero.  Therefore, if there is no property value in the bankruptcy estate to
cover the creditor's interest, the creditor's interest is valueless, despite the amount of
the creditor's claim.

Furthermore, "secured claims" and "unsecured claims" are terms of art in the
Bankruptcy Code.  "Whether a lienholder has a 'secured claim' or an 'unsecured claim,'
in the sense in which those terms are used in the bankruptcy code, depends on whether
the lienholder's interest in the collateral has economic value . . . ." *Lane v. Western
Interstate Bancorp (In re Lane),* 280 F.3d 663, 664 (6th Cir. 2002).  Therefore, if the
creditor's interest is zero, the creditor's interest in the collateral lacks economic value,
and the creditor has an unsecured claim.

Combined, sections 1322 and 506 mean that a creditor's claim which has no
economic value in the bankruptcy estate is an unsecured claim, and that creditor's
rights can be modified in the bankruptcy.  One of the ways in which to modify the
creditor's rights in a Chapter 13 bankruptcy is to void or "strip off" the lien.  A lien may
be  voided or "stripped off" if it is "not an allowed secured claim" as determined under §
506(a). 11 U.S.C. § 506(d).

Under this framework, allowed claims are first categorized into secured and
unsecured claims, pursuant to § 506(a)(1).  If they are either (1) unsecured claims or (2)

4

secured claims which are not secured by the debtor's personal residence, the rights of

the holders of those claims may be modified in the bankruptcy Plan.  Except in certain

instances that are not relevant here, those liens that secure a claim categorized as

unsecured may be modified by being voided, or stripped off.

### B.    Citizens' Claim Is Unsecured

According to § 506(a), an unsecured claim is: (1) an allowed claim of a creditor;

(2) secured by a lien on property; (3) in which the bankruptcy estate has an interest; and

(4) the value of the creditor's interest is less than the amount of the claim.  The parties

do not dispute that Citizens' claim is an allowed claim of a creditor which is secured by a

lien on property.  So, as the Bankruptcy Court did, we look to third element – whether

the bankruptcy estate has an interest in the property held as a tenancy by the entirety.

### (1) The entireties property is part of the bankruptcy estate.

Under Michigan law, a tenancy by the entirety means that "each spouse is

considered to own the whole and, therefore, is entitled to the enjoyment of the entirety

and to survivorship." *Rogers v. Rogers,* 136 Mich. App. 125, 1364 (Mich. Ct. 1984).

Furthermore, "[n]either the husband nor the wife has an individual, separate interest in

entireties property, and neither has an interest in such property which may be

conveyed, encumbered or alienated without the consent of the other." *Id.*  From this, it

would appear that Mr. Tomasi has no individual interest in the property.  However, "the

Bankruptcy Code does not always incorporate a state's definition of property into

section 541(a)(1)." *Arango v. Third National Bank (In re Arango),*  992 F.2d 611, 614

(6th Cir. 1993)

According to the Sixth Circuit:

> Congress could have taken two main approaches in dealing with tenancy by the entirety.  Congress could have excluded entireties property from the definition of the "legal or equitable" interests of the debtor in section 541(a)(1). . . .  Congress did not choose this approach.  Instead, Congress implicitly defines all of [a debtor's] interest in entireties property as property which is part of his individual bankruptcy estate . . . .

*Id.* at 614.

A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  "This definition includes an individual debtor's interest in property held as tenants by the entirety." *Finnerman v. Associates Financial Serv.*, 33 F.3d 54 (6th Cir. 1994); *see also In re Arango,* 992 F.2d at 614; *In re Grosslight,* 757 F.2d 773, 775 (6th Cir. 1985) ("It is now established law that this provision brings entireties property into the bankruptcy estate.").

Although Mr. Tomasi does not have an individual interest in the entireties property under Michigan law, Mr. Tomasi does have an individual, present possessory interest and a survivorship interest under the Bankruptcy Code.  These interests are part of his bankruptcy estate under § 541(a)(1).  Therefore, the full value of Mr. Tomasi's interest in the property is included in the bankruptcy estate. *See Brinley v. LPP Mortgage, Ltd. (In re Brinley),* 403 F.3d 415, 420 (6th Cir. 2005).  The economic value of this interest is $100,000; neither party disputes this value on appeal.

### (2) Citizens' interest is valueless.

Citizens' claim is for approximately $45,598 because that is the amount left unpaid on its mortgage; however, the value of Citizens' interest is zero.  This is because

6

the value of the property is approximately $100,000, and the first mortgagee has a claim

for more than $104,000.  Therefore, once the first mortgagee's claim is subtracted from

the value of the home in the bankruptcy estate, there is no economic value remaining.

Because no economic value remains, there is no value available to which Citizens'

claim can attach; so, Citizens' interest in the bankruptcy estate is valueless.  As

discussed above, when a lienholder's interest in collateral has no economic value, that

claim is classified as unsecured. Therefore, Citizens' claim is classified as unsecured

under § 506(a)(1).

### C.    Citizens' Claim May Be Voided

Section 506(d) provides: "To the extent that a lien secures a claim against the

debtor that is not an allowed secured claim, such lien is void . . . ."  It is clear that

Citizens' claim against Mr. Tomasi is unsecured, so it is "not an allowed secured claim."

Generally, when a lienholder's interest is valueless in a Chapter 13 bankruptcy, the lien

is void. 11 U.S.C. § 506(d).  Furthermore, the Sixth Circuit explicitly stated: "Where a

creditor holds a second mortgage on a homestead valued at less than the debtor's

secured obligation to a first mortgagee, . . . the holder of the second mortgage has only

an 'unsecured claim' for § 506(a) purposes." *In re Lane,* 280 F.3d at 664.  Despite this,

Citizens argues its lien cannot be stripped under § 506(d).

### (1) Voiding a lien does not sever a tenancy by the entirety.

Citizens argues that stripping a lien on an entireties property under § 506(d)

severs the entireties estate, and this cannot be accomplished by the individual action of

Mr. Tomasi.  However, stripping off a lien is not a severance, and the Court rejects

Citizens' argument.

Citizens relies on *Hunter v. Citifinancial, Inc. (In re Hunter),* 284 B.R. 806 (Bankr. E.D. Va. 2002) to support its position.  In *In re Hunter,* the U.S. Bankruptcy Court for the Eastern District of Virginia held that a Chapter 13 debtor could not void a lien on property owned by him and his non-filing spouse because it would sever the tenancy.

*In re Hunter* appears to be the only decision directly on point, and the Court finds its reasoning is unpersuasive.  First, it relies heavily on Virginia property law.  The Sixth Circuit made clear that interpretation of bankruptcy law is not controlled by state property law. *See In re Arango,* 992 F.2d at 614.  Second, it does not sufficiently explain how *removing* a lien creates an encumbrance.  Voiding an encumbrance does not require the consent of both spouses under Michigan law.  If so, one spouse could not pay off a mortgage loan without the consent of the other. The Court declines to follow this reasoning.

Relying again on the reasoning of *In re Hunter,* Citizens claims that even if the lien were stripped, it could be stripped only as to Mr. Tomasi, leaving a lien as to his wife, because she is not a party to the bankruptcy.  Citizens says this will encumber the entire property, because both spouses have an interest in the whole. This, according to Citizens, will sever the tenancy by the entirety.  However, were this true, it is not clear why this would sever the tenancy.  It is true that one spouse may not encumber the entireties property without the consent of the other, but removing a lien, even if only as to one spouse, does not encumber, convey, or transfer a property interest.  Therefore, the consent of both spouses is not necessary, and lack of consent from both will not sever the tenancy.

Furthermore, as the Bankruptcy Court correctly observed, "that logic is circular,

8

for the simple reason that if under the Bankruptcy Code the lien avoidance is held to be
effective as to both the debtor and the non-filing spouse, there is no such improper
severance." Op. at 9.   That the lien is authorized by both spouses does not mean that
there are two, separate and distinct liens held by Citizens.  "It is well settled under the
law of [Michigan] that one tenant by the entirety has no interest separable from that of
the other . . . .  Each is vested with an entire title." *Long v. Earle,* 277 Mich. 505, 517
(Mich. 1936).  Therefore, to procure a lien, Citizens required the consent of both
spouses.  This does not mean that Citizens has procured two liens, because each
individual spouse has no interest separable from the other, and, therefore, can give no
lien individually.  Without the consent of either spouse, Citizens would hold no lien at all.
Voiding the lien would mean voiding it in its entirety, and would leave no lien as to either
spouse.

While it is true that under Michigan property law both spouses hold the property
as one unit, state property law has little place in interpreting the Bankruptcy Code.
Therefore, as the Bankruptcy Code itself treats the full value of the entireties property as
belonging to one spouse, where, as here, a creditor holds a junior mortgage valued at
less than the debtor's secured obligation to a first mortgagee, the holder of the second
mortgage has only an "unsecured claim" for § 506(a) purposes, and the lien may be
voided.  Voiding the lien will remove the lien as to both Mr. Tomasi and his wife
because, although both spouses consented, there are not separate and distinct liens;
therefore, the lien may be voided in its entirety, as to both spouses.

### (2) A lien strip off is within the Bankruptcy Court's jurisdiction.

Citizens suggests that a judgment by the Bankruptcy Court voiding Citizens' lien

9

will be unenforceable because it will modify the rights of a person who is not before the
Bankruptcy Court; in other words, Citizens believes the Court lacks jurisdiction to strip
the lien as to the non-filing spouse.  This argument is misguided.

The portion of the Bankruptcy Code which allows modification of unsecured
claims, 11 U.S.C. § 1322, makes clear the court may modify rights of the *holder* of the
claim.  A lien strip off does not modify the rights of the non-filing spouse, or even the
rights of Mr. Tomasi; it modifies the rights of Citizens.  Clearly, Citizens is properly
before the Court.

### (3) The plain meaning of the statute supports voiding the lien.

Section 1322 says that a bankruptcy plan may "modify the rights . . . of holders of
unsecured claims, or leave unaffected the rights of holders of any class of claims." 11
U.S.C. § 1322(b)(2).  Citizens is a holder of an unsecured claim.  Furthermore, § 506(d)
states: "To the extent that a lien secures a claim against the debtor that is not an
allowed secured claim, such lien is void . . . ."  A "claim" is a "right to payment." 11
U.S.C. § 101.  And a "claim against a debtor" includes a "claim against property of the
debtor." 11 U.S.C. § 102.  The mortgage, although signed by both spouses, clearly
authorizes a claim against the property of Mr. Tomasi.  The statute does not permit
voiding a portion of the lien, or the lien as it applies to one person who consented, but
not the other.  The statute is clear.  Therefore, the lien should be voided.

Moreover, this Court is bound by the Sixth Circuit's decision of *In re Lane,* in
which the Court stated, "If a claimant's lien on the debtor's homestead has no value at
all, . . . the claimant holds an 'unsecured claim' and the claimant's contractual rights are
subject to modification by the plan." 280 F.3d at 669.  The Court emphasized that "the

dividing line drawn by § 1322(b)(2) runs between the lienholder whose security interest in the homestead property has some 'value,' see § 506(a), and the lienholder whose security interest is valueless." *Id.* at 668. Here, it is clear that Citizens' lien is valueless. Citizens "is thus the holder of an 'unsecured claim,' pure and simple- and if the words of § 1322(b) mean what they plainly say, the rights of a creditor holding such a claim 'may' be modified by the debtors' Chapter 13 plan." *Id.* Therefore, despite Citizens' arguments to the contrary, its contractual rights set out in the mortgage signed by both spouses may be altered, because its claim is valueless. Any other ruling is contrary to *In re Lane.*

### (4) Non-filing spouses often benefit from a filing spouse's bankruptcy.

Citizens claims that Mr. Tomasi "is attempting to thwart the law by allowing his non-filing wife, who has no standing to participate in the proceedings, to ride his coattails in his Chapter 13 case and obtain what she legally could not do in her own Chapter 7 bankruptcy case." Appellant's Br. 11. Mr. Tomasi's wife filed a Chapter 7 bankruptcy in 2008, and her case was discharged on January 13, 2009. Liens cannot be voided or stripped off in a Chapter 7 bankruptcy. *In re Talbert,* 344 F.3d 555 (6th Cir. 2003). Citizens believes that Mr. Tomasi should not be able to reach a different result by filing for Chapter 13 bankruptcy because his wife would benefit in a way she could not in her own bankruptcy.

As the Bankruptcy Court stated:

> The reality is that every day, bankruptcy courts construe and apply chapter 13 in ways that benefit non-filing spouses. The most important of these benefits is probably the benefit that the non-filing spouse enjoys when his or her spouse files a chapter 13 case for the purpose of maintaining possession of the entireties property while curing the default

11

in the mortgage on the property. Nothing in the Bankruptcy Code requires both parties to join in the filing for both of them to obtain that benefit. Similarly, nothing in the Bankruptcy Code requires a joint filing in a chapter 13 case to obtain the benefits of lien avoidance under § 506(a) and (d). In each instance, the incidental benefit to the non-filing spouse results from the fair application of the language of the Bankruptcy Code. That incidental benefit, by itself, is not grounds for a different result in either circumstance.

This Court agrees.

## IV.    CONCLUSION

The Court **AFFIRMS** the Order of the Bankruptcy Court.


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 9, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 9, 2010.

s/Linda Vertriest
Deputy Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                     :

SUZANNE M. JANITOR,                        :     **Bankruptcy No. 10-22594-JAD**
                                           :
              Debtor.                      :     **Chapter 7**
...................................:
Suzanne M. Janitor,                        :
                                           :
              Movant,                      :
                                           :
         v.                                :     **Related to Doc. No. 22**
                                           :
Fidelity Bank and PNC Bank,                :
                                           :
              Respondents.                 :

### ORDER OF COURT

**AND NOW,** this **4th** day of **January, 2011**, for the reasons set forth in the accompanying Memorandum Opinion of the same date; and subsequent to notice and a hearing on the matter that was held on August 31, 2010, it is **hereby ORDERED, ADJUDGED, AND DECREED** that the Debtor's lien avoidance motion pursuant to § 522(f) is **GRANTED** such that:

(a)    the **entirety of PNC Bank's $147,972.16** judicial lien is **avoided**; and

(b)    **$162,448.17** of **Fidelity Bank's** judicial lien is **avoided**, thereby leaving in place $40,307.00 of Fidelity's judicial lien.

**Dated:** January 4, 2011

_____
**JEFFERY A. DELLER**
U.S. Bankruptcy Judge

00005321.WPD

**FILED**

JAN 0 4 2011

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA